UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEX SHTEYNSHLYUGER,

            *Plaintiff*,

v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES, et al.,

            *Defendants*.

Civil Action No. 20-2982 (RDM)

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ...........................................................................................................................1

STANDARD OF REVIEW ...........................................................................................................4

ARGUMENT .................................................................................................................................5

I.    CMS Made a Good Faith Effort to Perform the Searches Using Methods Which Can Be Reasonably Expected to Produce the Information Requested. ......................................................6

II.    CMS Properly Invoked FOIA Exemptions 4, 5, and 6.....................................................9

   A.  CMS Properly Applied Exemption 4 To Confidential Commercial and Financial Information. ..................................................................................................................................10

   B.  CMS Properly Applied Exemption 5 to Deliberative Process Material. ...........................13

   C.  Defendants Appropriately Withheld Names and Contact Information of Third Parties Pursuant to Exemption 6. ..........................................................................................................18

III.    CMS Reasonably Segregated Non-Exempt Information.................................................20

CONCLUSION ............................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Access Reports v. Dep't of Just.*,
   926 F.2d 1192 (D.C. Cir. 1991) ....................................................................15
*Acosta v. FBI*,
   946 F. Supp. 2d 47 (D.D.C. 2013) ................................................................3
*Ancient Coin Collectors Guild v. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) .....................................................................14
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .....................................................................................4
*Armstrong v. Exec. Off. of the President*,
   97 F.3d 575 (D.C. Cir. 1996) ................................................................. 20-21
*Boyd v. Crim. Div.*,
   475 F.3d 381 (D.C. Cir. 2007) .....................................................................6
*Brannum v. Dominguez*,
   377 F. Supp. 3d 75 (D.D.C. 2005) ...............................................................15
*Brayton v. Off. of U.S. Trade Rep.*,
   641 F.3d 521 (D.C. Cir. 2011) .....................................................................4
*Canning v. Dep't of Just.*,
   567 F. Supp. 2d 104 (D.D.C. 2008) .............................................................20
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986); ...................................................................................4
*Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007). ........................................................... 4-5
*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .....................................................................14
*Critical Mass Energy Project v. Nuclear Regulatory Commission*,
   975 F.2d 871 (D.C. Cir. 1992) .....................................................................11
*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   244 F.3d 144 (D.C. Cir. 2001) .....................................................................11
*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
   436 F. Supp. 3d 90 (D.D.C. 2019) ...............................................................11
*Dep't of Just. v. Tax Analysts, Dep't of State v. Wash. Post Co.*,
   492 U.S. 136 (1989) .....................................................................................9
*Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) .....................................................................................18
*Dudman Commc'ns Corp. v. Dep't of Air Force*,
   815 F.2d 1565 (D.C. Cir. 1987) ...................................................................13
*Elec. Frontier Found. v. Dep't of Just.*,
   739 F.3d 1 (D.C. Cir. 2014) .........................................................................15
*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ...................... 10-11
*Formaldehyde Inst. v. Dep't of Health & Human Servs.*,
   889 F.2d 1118, 1123 (D.C. Cir. 1989) ..........................................................14
*Gallant v. NLRB*,
   26 F.3d 168 (D.C. Cir. 1994) .......................................................................10

*Govt. Accountability Project v. Dep't of State,*
    699 F. Supp. 2d 97 (D.D.C. 2010) .................................................................................19
*Hidalgo v. FBI,*
    344 F.3d 1256 (D.C. Cir. 2003) ......................................................................................3
*Iturralde v. Comptroller of Currency,*
    315 F.3d 311 (D.C. Cir. 2003) ........................................................................................6
*Jean-Pierre v. Federal Bureau of Prisons,*
    880 F.Supp.2d 95 (D.D.C. 2012) ....................................................................................3
*Juarez v. Dep't of Just.,*
    518 F.3d 54 (D.C. Cir. 2008).........................................................................................20
*Jud. Watch, Inc. v. FDA,*
    449 F.3d 141 (D.C. Cir. 2006) ......................................................................................14
*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ......................................................................................15
*Lepelletier v. FDIC,*
    164 F.3d 37 (D.C. Cir. 1999).........................................................................................18
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .........................................................................................................4
*McGehee v. CIA,*
    697 F.2d 1095 (D.C. Cir. 1983)......................................................................................5
*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
    *566 F.2d 242 (D.C. Cir. 1977)*.......................................................................................9
*Media Rsch. Ctr. v. Dep't of Just.,*
    818 F. Supp. 2d 131 (D.D.C. 2011) ............................................................................4-5
*Military Audit Project v. Casey,*
    *656 F.2d 724 (D.C. Cir. 1981)*...............................................................................5, 10
*Montrose Chem. Corp. v. Train,*
    491 F.2d 63 (D.C. Cir. 1974).........................................................................................14
*Nat'l Sec. Archive v. CIA,*
    752 F.3d 460 (D.C. Cir. 2014) ................................................................................ 13-14
*Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n,*
    *216 F.3d 1180 (D.C. Cir. 2000)*.....................................................................................9
*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975).................................................................................................13, 15
*Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990)......................................................................................6, 9
*Pub. Citizen Health Rsch. Grp. v. FDA,*
    704 F.2d 1289 (D.C. Cir. 1983).....................................................................................10
*Renewable Fuels Assoc. v. EPA,*
    Civ. A. No. 18-2031 (JEB), 2021 WL 602913 (D.D.C. Feb. 16, 2021), ...................11
*Rosenberg v. Dep't of Immigration and Customs Enforcement,*
    Civil Action No. 12-452 (CKK), 2013 WL 3791461 (D.D.C. July 22, 2013) ............3
*Russell v. Dep't of Air Force,*
    682 F.2d 1045 (D.C. Cir. 1982).....................................................................................13
*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991)......................................................................................6

*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998)......................................................................................10
*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007)..................................................................................20
*Tao v. Freeh*,
   27 F.3d 635 (D.C. Cir. 1994)........................................................................................4
*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*,
   177 F.3d 1022 (D.C. Cir. 1999)..................................................................................10
*U.S. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986)......................................................................................9
*U.S. Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ......................................................................................................9
*United States v. Nixon*,
   418 U.S. 683, 705 (1974) ............................................................................................13
*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973)...........................................................................5, 9, 14
*Washington v. U.S. Dep't of Labor ("CREW")*,
   478 F. Supp. 2d 77 (D. D.C. 2007) ............................................................................10
*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980)......................................................................................5
*Wolfe v. Dep't of Health & Human Servs.*,
   839 F.2d 768 (D.C. Cir. 1988)....................................................................................15


**Statutes**
5 U.S.C. § 552(a)(4)(B)....................................................................................................9
5 U.S.C. § 552(a)(8)(A)(i)..............................................................................................16
5 U.S.C. § 552(b).......................................................................................................9-10
5 U.S.C. § 552(b)(4)...................................................................................................10-12
5 U.S.C. § 552(b)(5)...................................................................................................13-18
5 U.S.C. § 552(b)(6)...................................................................................................18-20
5 U.S.C. § 552(b)(9)........................................................................................................20


**Rules**
Fed. R. Civ. P. 12(b)(6)....................................................................................................3
Fed. R. Civ. P. 56(a)........................................................................................................4


**Regulations**
45 C.F.R. § 5.24(d) ..........................................................................................................6
45 C.F.R. § 5.31(e)..........................................................................................................13

Plaintiff, Alex Shteynshlyuger, M.D., brought this Freedom of Information Act ("FOIA") action against Defendants, the Centers for Medicare and Medicaid Services ("CMS") and U.S. Department of Health and Human Services ("Department"), seeking to compel production of records in response to Plaintiff's eight FOIA requests. As supported by this memorandum, the accompanying declaration of Hugh Gilmore (the Director of CMS's FOIA Group), and the exhibits hereto, Defendants conducted reasonable searches, properly applied FOIA Exemptions 4, 5, and 6, and appropriately disclosed all reasonably segregable, nonexempt information. Accordingly, the Court should grant summary judgment in favor of CMS and the Department.

## BACKGROUND[1]

CMS is a federal agency within the Department that administers the Medicare program and works in partnership with state governments to administer Medicaid, the Children's Health Insurance Program, and health insurance portability standards. In addition to these programs, CMS has other responsibilities, including the administrative simplification standards from the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), quality standards in long-term care facilities (more commonly referred to as nursing homes) through its survey and certification process, clinical laboratory quality standards under the Clinical Laboratory Improvement Amendments, and oversight of HealthCare.gov. *See* Gilmore Decl. ¶ 6, attached hereto as Ex. A.

On April 13, 2020, Plaintiff submitted a FOIA Request, control number 041320207068 ("April 13 Request"). *See* Gilmore Decl. ¶ 5; Stmt. of Facts ¶ 1. As a result of diligent searches,

---

[1]    Defendants incorporate by reference the Statement of Undisputed Material Facts ("Stmt. of Facts") filed contemporaneously with this motion.

Gilmore Decl. ¶¶ 18-27, CMS identified 66 pages, of which 21 had portions redacted pursuant to Exemption 5, and 15 pages had portions redacted pursuant to Exemption 6. Gilmore Decl. ¶ 26.

On May 4, 2020, Plaintiff submitted a FOIA Request, control number 050420207041 ("May 4 Request"). *See* Gilmore Decl. ¶ 28; Stmt. of Facts ¶ 2. As a result of diligent searches, Gilmore Decl. ¶¶ 31-38, 43, CMS identified 28 pages, of which 9 had portions redacted pursuant to Exemptions 5 and 6. *Id.* ¶ 38.

On May 6, 2020, Plaintiff submitted a FOIA Request, control number 050620207011 ("May 6 Request"). *See* Gilmore Decl. ¶ 45; Stmt. of Facts ¶ 3. After diligent searches, Gilmore Decl. ¶¶ 48-55, CMS was unable to locate records that were responsive to the May 6 Request. *Id.* ¶ 54.

On May 7, 2020, Plaintiff submitted a FOIA request, control number 050720207010 ("May 7 Request"). *See* Gilmore Decl. ¶ 56; Stmt. of Facts ¶ 4. Gilmore Decl. ¶ 56. After diligent searches, Gilmore Decl. ¶¶ 59-61, records responsive to Plaintiff's May 7 Request were located and were incorporated in the January 14, 2021, production response. *Id.* ¶ 50.

On May 12, 2020, Plaintiff submitted a FOIA request, control number 061120207021 ("May 12 Request"). *See* Gilmore Decl. ¶¶ 62, 64; Stmt. of Facts ¶ 5. As a result of diligent searches, Gilmore Decl. ¶¶ 65-81, forty-six pages of responsive records to Plaintiff's May 12 Request were located and were incorporated in the January 14, 2021, production response.

On May 15, 2020, Plaintiff submitted a FOIA request, control number 051820207004 ("May 15 Request"). *See* Gilmore Decl. ¶ 82; Stmt. of Facts ¶ 6. As a result of diligent searches, Gilmore Decl. ¶¶ 85-93, CMS released 1,971 pages in full, 133 pages in part, and withheld 1,231

pages entirely pursuant to FOIA Exemptions 4, 5, and 6. *Id.* ¶ 87. There is no record that Plaintiff appealed.[2] *Id.*

On July 22, 2020, Plaintiff submitted a FOIA Request, control number 072320207002 ("July 22 Request"). *See* Gilmore Decl. ¶ 94; Stmt. of Facts ¶ 7. As a result of diligent searches, Gilmore Decl. ¶¶ 97-104, CMS responded that the records in the July 22 Request were in Public Use Files on the CMS web site, specifically, that Public Use Data Files which contain data on Medicare reimbursements and fees for medical equipment were posted on the CMS website. *Id.* ¶ 101.

On July 29, 2020, Plaintiff submitted a FOIA request, control number 072920207040 (PIN R4ML) ("July 29 Request"). *See* Gilmore Decl. ¶ 105; Stmt. of Facts ¶ 8. After a diligent search, Gilmore Decl. ¶¶ 107-112, CMS identified 92 pages of responsive records. *Id.* ¶¶ 110-111.

On October 16, 2020, Plaintiff filed this action. *See* ECF No. 1.

---

[2]    As discussed below, Plaintiff failed to appeal the production, thus he failed to exhaust his administrative remedies with regard to this request. "[W]here an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim," as the D.C. Circuit has instructed. *Jean-Pierre v. Federal Bureau of Prisons*, 880 F.Supp.2d 95, 100 n.4 (D.D.C. 2012) (citations and quotation marks omitted); *see Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating grant of summary judgment and remanding FOIA case "with instructions to the district court to dismiss the complaint under [Rule] 12(b)(6) . . . for failure to exhaust administrative remedies"). However, as one court has recently noted, "the difficulty with [the D.C. Circuit's] directive is that Rule 12(b)(6) confines a court to the Complaint, subject to a few exceptions not applicable here." *See Acosta v. FBI*, 946 F. Supp. 2d 47, 50 (D.D.C. 2013). "Yet, most exhaustion analyses will require courts to consider materials outside of the Complaint -- e.g., declarations describing how agencies responded to requests and letters memorializing their communications to requesters -- particularly when dealing with pro se litigants, who are unlikely to provide a full procedural background of their claim." *Id.* Furthermore, this Court's Rules provide that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Rosenberg v. Dep't of Immigration and Customs Enforcement*, Civil Action No. 12-452 (CKK), 2013 WL 3791461 at *3 (D.D.C. July 22, 2013) (treating defendant's motion to dismiss as one for summary judgment because of the reliance on evidence outside the pleadings). Accordingly, the Court should dismiss Plaintiff's claims arising from this request.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. Thus, summary judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.* In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v.*

*Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137. "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

**ARGUMENT**

As demonstrated below, in the accompanying Statement of Material Facts Not in Genuine Dispute, the Gilmore Declaration and exhibits, there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law. Accordingly, the Court should grant summary judgment in Defendants' favor.

I.    **CMS Made a Good Faith Effort to Perform the Searches Using Methods Which Can Be Reasonably Expected to Produce the Information Requested.**

An agency must demonstrate "that it made a good faith effort" to perform the searches, "using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). If a FOIA requester challenges the adequacy of the agency's search, "the agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 313–14 (D.C. Cir. 2003). These affidavits "are accorded a presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007). Similarly, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs.*, 926 F.2d at 1201.

Here, CMS's FOIA regulations, 45 C.F.R. § 5.24(d), explain and define how the agency establishes a search cut-off date. As the end, or cut-off date, for a documents' search, CMS uses the date on which it first began its search for responsive documents, unless the FOIA requestor specifies an earlier cut-off date, or a specific date range for the documents search. Gilmore Decl. ¶ 18. CMS uses the date of the first search when a requester seeks documents "through the present," "through today," or similar language. *Id.* Because Plaintiff's requests sought records with specific date ranges for the documents' searches—from January 1, 2015, to April 10, 2020— CMS used the dates specified by Plaintiff. *Id.*

Each of Plaintiff's requests was assessed for the types of records that Plaintiff requested. *See e.g.,* Gilmore Decl. ¶ 19. Based on that assessment for each request, CMS searched the records

systems that were likely to turn up the information that Plaintiff requested.  *Id.*  Specifically, the National Standards Group (or "NSG") is the custodian of records related to the Administrative Simplification process, which are stored in the Administrative Simplification Enforcement and Testing Tool ("Testing Tool" or "ASETT") system.  *Id.* ¶ 21.  The Testing Tool is a web-based application which enables individuals or organizations to file a complaint against a HIPAA covered entity for potential non-compliance with HIPAA adopted transactions, code sets, unique identifiers and operating rules.  *Id.*  The Testing Tool also allows all HIPAA related transactions to be checked consistently for compliance, syntax, and business rules, so that these transactions can be validated across various formats.  *Id.*  The Testing Tool does this by validating the code values against clinical and non-clinical code sets or procedure code sets.  *Id.*

CMS's correspondence unit is under the Office of Strategic Operations and Regulatory Affairs ("Regulatory Affairs Office" or "OSORA"), overseen by the Office of the Administrator of CMS.  *Id.* ¶ 8.  The Regulatory Affairs Office uses the Strategic Work Information Folder Transfer System ("SWIFT") database which contains copies of incoming correspondence to the CMS Administrator and leadership and is disseminated by Regulatory Affairs staff to subject matter experts in CMS to formulate responses.  *Id.* ¶ 25.

The HIPAA System (or "HITS") is a Privacy Act system of records that collects and maintains information on complaint allegations, information gathered during the complaint's investigation, findings, and results of the investigation, and correspondence related to the investigation.  Gilmore Decl. ¶ 76.  The HIPAA System represents a single, central, electronic repository of all complaints' documents and information including related investigative files, correspondence, and administrative records.  *Id.*  The collected information contains name, address, telephone number, health insurance claim number, geographic location, and background

information which relate to the Medicare or Medicaid issues of the complainant. *Id.* The HIPAA System also covers the business information of the respondent to a complaint, that is, the entity or person against whom the complaint is directed, usually a company. *Id.* The respondent submits information to respond to the complaint, in this instance about electronic funds transfer, which is considered business confidential as the company is provided a PIN access to the Testing Tool system to enter their confidential information and response to the complaint. *Id.*

CMS Regional Office 2 covers the region of New York, where Plaintiff is located and where the companies and law firms about which Plaintiff sought information are located. Gilmore Decl. ¶ 67. Regional Office 2 handles correspondence related to that region and uses the Automated Survey Processing Environment Network ("Automated Survey Network" or "ASPEN"), which contains information on survey and certifications of Medicare providers. *Id.*

The Centers for Clinical Standards and Quality (or "CCSQ") handles laboratories, nursing homes, and other facilities. Gilmore Decl. ¶ 70. The Centers for Clinical Standards conducted an automated search in the Automated Survey Network. *Id.*

The Office of Legislation is overseen by the Office of the Administrator of CMS, is a separate office which handles Congressional correspondence for the CMS Administrator. Gilmore Decl. ¶ 11. It oversees the Congressional Affairs group, and the Audit Management Group among others. *Id.* ¶ 8. The Office of Legislation conducted an automated search of the Outlook email system. The Center for Consumer Information and Insurance Oversight (or "CCIIO") handles insurance claims. Gilmore Decl. ¶ 71.

The search terms and keywords for seven of the requests were supplied by Plaintiff. Gilmore Decl. ¶¶ 23 (April 13 Request); 35 (May 4 Request); 53 (May 6 Request); 60 (May 7

Request); 66-71 (May 12 Request); 86 (May 15 Request); 98 (July 22 Request); and 109 (July 29 Request).

By casting a wide net using general terms and search terms supplied by Plaintiff, searching all files identified as likely to contain relevant documents were searched, Defendants have demonstrated "that [they] made a good faith effort" to perform the searches, "using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Accordingly, the Court should grant summary judgment in Defendants' favor.

## II.    CMS Properly Invoked FOIA Exemptions 4, 5, and 6.

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the FOIA's nine exemptions. *See* 5 U.S.C. § 552(b); *see also Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn*, 484 F.2d at 828.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"

*CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). The D.C. Circuit has held that district courts have an affirmative obligation to consider this issue and make segregability findings. *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### A. CMS Properly Applied Exemption 4 To Confidential Commercial and Financial Information.[3]

Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privilege or confidential." 5 U.S.C. § 552(b)(4) (footnote added). A commercial or financial matter is considered confidential under Exemption 4 if it is "customarily kept private, or at least closely held, by the person imparting it." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019). In *Argus Leader*, the Supreme Court held that commercial or financial information is "confidential" within the meaning of Exemption 4 "[a]t least" where the information is "customarily and actually treated as private by its owner" and, possibly, "provided to the government under an assurance of privacy." 139 S. Ct. at 2366. The terms "'commercial' and 'financial' in the exemption should be given their ordinary meanings." *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1289, 1290 (D.C. Cir. 1983). Information is confidential for the purpose of Exemption 4 "when it is 'both customarily and actually treated as

---

[3]    CMS asserted Exemption 4 for the following documents: CMS2 0391-0397, CMS2 0401-0402, and CMS2 0427-0436.

private by its owner,' and perhaps as well, 'provided to the government under an assurance of privacy.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 109 (D.D.C. 2019) (quoting *Argus Leader,* 139 S. Ct. at 2366).

While the D.C. Circuit has not "yet grappled with" *Argus Leader*'s ramifications, "assessing the defendants' assertion that the information withheld under Exemption 4 is confidential is not done on a blank slate." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 109. In *Center for Investigative Reporting*, the Court observed that *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C. Cir. 1992) (en banc), supplies the proper framework "for determining whether voluntarily submitted *and* involuntarily submitted commercial or financial information are 'confidential' under Exemption 4." 436 F. Supp. 3d at 109. Under *Critical Mass*, information is "'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." 975 F.2d at 879; *accord Argus Leader*, 139 S. Ct. at 2363 ("[I]nformation communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it."); *id.* at 2366 (concluding that commercial or financial information is "customarily and actually treated as private by its owner"). The *Critical Mass* test is "objective." 975 F.2d at 879. Further, courts consider "how the particular party customarily treats the information[.]" *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001). [4]

---

[4]    In *Renewable Fuels Assoc. v. EPA*, Civ. A. No. 18-2031 (JEB), 2021 WL 602913, at *7-8 (D.D.C. Feb. 16, 2021), this Court declined to hold that "privately held information lose[s] its confidential character for purposes of Exemption 4 if it's communicated to the government without" privacy assurances," reiterating instead that it remains "binding authority" and the law of "law of the D.C. Circuit" that information is confidential under Exemption 4 "if it is of a kind that would customarily not be released to the public by the person [or entity] from whom it was obtained." (quoting *Critical Mass*, 975 F.2d at 879) (internal quotations omitted).

Here, CMS withheld records of correspondence relating to complaints, the subject of which is a business entity to which responses were submitted regarding the complaint. *Vaughn* Index. at 17 (CMS2 0391-03970, CMS2 0401-0402), 18 (CMS2 0427-0436). The submitter considered the responses to be business confidential. Gilmore Decl. ¶¶ 74-78. CMS applied Exemption 4 only to information that was supplied by individuals in complaints they had filed on behalf of their employer (which are not the Plaintiff) or to information that related to a respondent company's exchanges with CMS about that complaint. Gilmore Decl. ¶ 77. This information was obtained from the Testing Tool database and information system. *Id.*

These records consisted of the complaint, CMS email exchanges with the complainant, the respondent company's email to CMS about the complaint and any proposed resolution by the respondent company to CMS. *Id.* The information was commercial or financial because the complaint dealt with electronic funds transfer which relate to financial transactions. *Id.* The information was obtained from a business entity because it was provided by entities like electronic funds clearinghouses, who are generally known to be business entities. *Id.* The information was confidential because the respondent is a company replying to CMS about the complaint through its secure web site at CMS. *Id.* The information was also customarily and actually treated as private by its owners, including because it is restricted with password access. *Id.* CMS conducted a line-by-line review of the 46 pages of records returned in the searches and determined that some non-exempt, factual information within them could be segregated for release. *Id.* ¶ 78.

Accordingly, Defendants have met their burden of demonstrating that the withheld information constitutes commercial and financial confidential information. Thus, Defendants appropriately withheld this information in full pursuant to Exemption 4.

**B.    CMS Properly Applied Exemption 5 to Deliberative Process Material.**[5]

FOIA Exemption 5 protects from public disclosure "inter-agency and intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5); *see also* 45 C.F.R. § 5.31(e).  It protects all communications that are normally privileged in the civil discovery context.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  One of the rationales for the deliberative process privilege is to encourage the candid and frank exchange of ideas in the agency's decisionmaking process. "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974).  "If agencies were to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987)). In other words, agency officials "should be judged by what they decided, not for matters they considered before making up their minds." *Nat'l Sec. Archive*, 752 F.3d at 463 (quoting *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C. Cir. 1982)) (quotation omitted).

---

[5]    CMS asserted Exemption 5 for the following documents:  CMS2 002-0004, CMS2 0008-0010, CMS2 0011-0013, CMS2 0014-0016, CMS2 0019-0021, CMS2 0022, CMS2 0023-0032, CMS2 0033-0034, CMS2 0035-0036, CMS 0038-0040, CMS2 0041, CMS2 0042-0047, CMS2 0048-0049, CMS2 0050-0059, CMS2 0060-0063, CMS2 0063, CMS2 0064-0075, CMS2 0076-0088, CMS2 0089, CMS2-0091-101, CMS2 0108-0111, CMS2 0112-0114, CMS2 0115-0121, CMS2 0122-0123, CMS2 0129, CMS2 0130-0131, CMS2 0132-0139, CMS2 0140, CMS2 0141, CMS2 0142-0144, CMS2 0151-0152, CMS2 0153-0154, CMS2 0155-0157, CMS2 0158-0164, CMS2 0165-0169, CMS2 0170-0171, CMS2 0172-0178, CMS2 0179-0193, CMS2 0194-202, CMS2 0203-0218, CMS2 0219-0230, CMS2 0231-281, CMS2 0282-0288, CMS2 0291-0297, CMS2 0308-0314, CMS2 0322-0328, CMS2 0329-0355, CMS2 0356, CMS2 0357-0376, and CMS2 0377-0379.

The deliberative process privilege protects communications that would expose the deliberative processes of the agency if disclosed. *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68–71 (D.C. Cir. 1974). It covers communications that are pre-decisional and deliberative. *See Jud. Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006). "To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter." *See id.; see also Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (agency recommendations were predecisional because they were created before the adoption of an agency policy); and (2) "deliberative," meaning it is a part of the deliberative process and makes recommendations or expresses opinions on legal or policy matters, *Vaughn*, 523 F.2d at 1143–44.

The term "deliberative" in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue. *See Nat'l Sec. Arch.,* 752 F.3d at 463. To be deliberative, the document must reflect the "give-and-take of the consultative process" by assessing the merits of a viewpoint or articulating the process used to reach a decision. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (holding that the deliberative process privilege covers documents that reflect the opinions of the writer rather than the policy of the agency). Like the term "predecisional," the issue centers on the role of the document within an agency process—whether its communication is a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1143–44. Courts must examine the context in which the information is used, the role the information plays in the context, and the harm its release would do to the decisionmaking process. *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1123–24 (D.C. Cir. 1989).

14

The issue turns not on whether an agency can necessarily point to a final decision but whether the document contributes to a larger process of agency decisionmaking. *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (upholding the use of the deliberative process privilege where a withheld memorandum contributed to an agency's decisionmaking process regarding how to respond to critics of proposed amendments to FOIA). An agency can expressly choose to adopt or incorporate by reference the document in a final decision. *See*, *e.g.*, *Sears*, 421 U.S. at 161; *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014). However, the burden is on the requestor to demonstrate express adoption or incorporation. *Elec. Frontier Found.*, 739 F.3d at 11.

Although purely factual information is not generally protected by the deliberative process privilege because it does not expose staff opinions or deliberations, the line between factual and deliberative information is not straightforward—factual information must therefore be examined in the context in which it is used and in light of the purpose underlying the privilege. *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc); *see also Brannum v. Dominguez*, 377 F. Supp. 3d 75, 83 (D.D.C. 2005) (holding that factual material still fell within Exemption 5 because they were used by agency personnel to develop recommendations to a decisionmaker and thus implicated the policy purposes of Exemption 5); *Elec. Frontier Found.*, 739 F.3d at 12 (finding that an entire document, including factual material, "'reflects the full and frank exchange of ideas'" so that factual portions "'could not be released without harming the deliberative processes of the government'" (citations omitted)).

FOIA also requires that agencies may only withhold a document under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an

exemption" or if "disclosure is prohibited by law[.]" FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)).

Here, CMS invoked the deliberative process privilege, and redacted material consisting of pre-decisional, deliberative draft document among CMS officials to protect pre-decisional, deliberative communications. There are three types of records: (1) drafts of emails sent to congressional staff regarding potential administrative or regulatory reform actions under consideration at CMS, Gilmore Decl. ¶ 40; (2) drafts of materials or in a "frequency asked questions" or "FAQ" document, *id.* ¶ 90; and (3) inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency, *id.* ¶ 116.

First, relating to the drafts of emails to congressional staff, these emails among employees of CMS related to information on incoming correspondence from an exterior source, evaluating how the correspondence should be handled, where and which operating division should be tracking this correspondence, whether that correspondence was a follow-up on a previous correspondence, and whether a single CMS response was warranted. *Id.* The email exchanges among employees were pre-decisional because they addressed how to handle and debate the best route to take. *Id.* Release of this information would cause foreseeable harm into the internal workings and processes of the agency because it would create a chilling effect of future employees' discussions and block the free exchange of ideas, including ideas that could improve and streamline the efficient functioning of CMS. *Id.* CMS also conducted a line-by-line review of the 28 pages of records returned in the searches and determined that some non-exempt, factual information within them could be segregated for release. *Id.*

Second, the deliberative process privilege applied to those materials that were pre-decisional and consisted of CMS briefing materials on FAQ drafts, drafts of an FAQ briefing paper, drafts of responses to Plaintiff's complaints, a draft memo between CMS staff regarding an FAQ revision, draft CMS responses to electronic transaction complaints, drafts of responses to complaints of Plaintiff and a draft memo between CMS staff of FAQ revision.   Gilmore Decl. ¶ 90.  The release of this information would cause harm, including more confusion to the providers and clearinghouses that conduct electronic fund transactions if the questions and answers were  not clearly stated or ambiguous.  *Id.*  The material was pre-decisional because it consisted of deliberation over proposed  changes to the framing  of  the questions and amendment of response answers which  needed to be vetted  in  CMS for accuracy.  *Id.*  The material was deliberative because it consisted of proposed  changes to  the publication  of FAQs.  Id.

CMS conducted a line-by-line review of the 3,335 pages of records returned in the searches and determined that none of this information is segregable because disclosing any part of this information would also reveal comments and redline edits in the documents which in turn would easily reveal the contents of CMS employees' deliberations.  *Id.*  These redactions were withheld entirely and consisted of one hundred forty-three pages.  *Id.*

Third, regarding the "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency," CMS invoked this deliberative process privilege to protect pre-decisional, deliberative communications from CMS personnel to congressional staff regarding potential administrative or regulatory reform actions under consideration at CMS.  *Id.* ¶ 116.  The information was deliberative because it consisted of FAQ drafts, drafts of an FAQ briefing paper, drafts of responses to Plaintiff's complaints, and a draft memo between CMS staff of FAQ revision that were discussing

clarification to the sub regulatory policy. The information was pre-decisional because it contains opinion and recommendations of CMS staff.  Release of this information would cause foreseeable harm into the internal workings and processes of the agency because it would result in further confusion of the agency policy if contradictory or unclear information were disclosed versus the final policy.  CMS conducted a line-by-line review of the 466 pages returned in the agency's searches and determined that some non-exempt, factual information within them could be segregated for release.  None of this information was segregable because disclosing any part of this information would also reveal comments and redline edits in the documents which in turn would easily reveal the contents of CMS employees' deliberations.  *Id.*

C.    **Defendants Appropriately Withheld Names and Contact Information of Third Parties Pursuant to Exemption 6.[6]**

Initially, Plaintiff is not challenging the use of Exemption 6 to withhold signatures and the personal mobile phone numbers of agency employees.  *See* ECF No. 23, at 4 n.1.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all

---

[6]    CMS asserted Exemption 6 on the following documents:  CMS2 0048-0049, CMS2 0108-0111, CMS2 0115-0121, CMS2 0130-0131, CMS2 0132-0139, CMS2 0141, CMS2 0142-0144, CMS2 0145, CMS2 0151-0152, CMS2 0155-0157, CMS2 0158-0164, CMS2 0165-0169, CMS2 0170-0171, CMS2 0179-0193, CMS2 0194-202, CMS2 0203-0218, CMS2 0289-0290, CMS2 0315-321, CMS2 0380-0387, CMS2 0388-0390, CMS2 0391-0397, CMS2 0403-0404, CMS2 0411-0415, CMS2 0416-0421, CMS2 0422, CMS2 0427-0436, CMS2 0441-455, CMS2 0457-0461, and CMS2 0462-0466.

information that applies to a particular individual."); *Govt. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

Here, CMS redacted information that "would constitute a clearly unwarranted invasion of personal privacy," including personal cell phone numbers, private sector email addresses (which were contained in a personnel, medical, or similar file).  Gilmore Decl. ¶ 41.  In each instance where information was withheld pursuant to Exemption 6 of the FOIA, CMS determined that the individual's privacy interest was not outweighed by the public interest in disclosure of that information.  *Id*.  Here, releasing the cell phones numbers that were redacted, would be considered an unwarranted invasion of personal privacy because since cell phones are carried oftentimes on an individual, or follow an individual wherever that individual goes.  *Id.*  With a cell phone number, an individual is accessible even beyond normal business hours.  *Id.*  Defendant conducted a segregability analysis of all withheld records and every effort has been made to release all segregable information to plaintiffs without invading the privacy interest of the individual who was mentioned in the records discussed above.  *Id.*

Exemption 6 was applied to the records located in the Testing Tool system.  Gilmore Decl. ¶ 79.  To disclose this information to anyone other than the complainant would constitute an unwarranted invasion of privacy and violate the business confidentiality of the business submitter, who is the respondent to the complainant.  *Id.*  The business respondent does not publish complaints that were filed with CMS against it in the Testing Tool system.  *Id.*   In each instance where such information was withheld pursuant to Exemption 6, CMS determined that the individual's privacy interest was not outweighed by the FOIA public interest in disclosure of that information.  *Id*.  Defendant conducted a segregability analysis of all withheld records and made

19

every effort to release all segregable information to Plaintiff without invading the privacy interest of the individual who was mentioned in the records discussed above. *Id.*

### III.     CMS REASONABLY SEGREGATED NON-EXEMPT INFORMATION.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." *See* 5 U.S.C. § 552(b)(9). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And a reviewing court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, CMS conducted a line-by-line review of the records returned in the searches and determined that some non-exempt, factual information within them could be segregated for release. Gilmore Decl. ¶¶ 40-42 ("CMS also conducted a line-by-line review of the twenty-eight pages of records returned in the searches and determined that some non-exempt, factual information within them could be segregated for release."); *id.* ¶¶ 78-80 ("CMS conducted a line-by-line review of the forty-six pages of records returned in the searches and determined that some non-exempt, factual information within them could be segregated for release."); *id.* ¶¶ 89-92 ("CMS conducted a line-by-line review of the 3,335 pages of records returned in the searches and determined that some non-exempt, factual information within these pages could be segregated for

release."); *id*. ¶¶ 116-119 ("CMS conducted a line-by-line review of the 466 pages returned in the agency's searches and determined that some non-exempt, factual information within them could be segregated for release."). Thus, as described in the Gilmore Declaration, Defendants conducted segregability analyses of all withheld records and made every effort to release all segregable information to Plaintiff. Accordingly, summary judgment in the Defendants' favor is warranted, as Defendants have established that the information withheld in full could not be reasonably segregated. *Armstrong,* 97 F.3d at 578-79.

## CONCLUSION

For the above reasons, CMS respectfully requests that the Court grant summary judgment in its favor.

Dated: December 16, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN HUDAK
Chief, Civil Division

By:     */s/ T. Anthony Quinn*
T. ANTHONY QUINN
Assistant United States Attorney
D.C. Bar No. 415213
United States Attorney's Office
Civil Division
601 D Street, NW
Washington, D.C. 20530
(202) 252-7558
Tony.Quinn2@usdoj.gov

*Counsel for Defendant*